IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 6, 2004

## STATE OF TENNESSEE v. ALLISON L. BREWINGTON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-620     Steve Dozier, Judge**

**No. M2003-00764-CCA-R3-CD - Filed April 14, 2004**

The Appellant, Allison L. Brewington, appeals the decision of the Davidson County Criminal Court revoking his probation and ordering reinstatement of his original sentence. Brewington pled guilty to the aggravated assault of his girlfriend on October 28, 2002, and received a four-year suspended sentence. On December 5, 2002, a warrant was issued, alleging that Brewington violated his probation by harassing the victim on two occasions and failing to report his arrests for these offenses to his probation officer. On appeal, Williams raises the following issues for our review: (1) whether the trial court erred in revoking his probation because the State failed to prove by a preponderance of the evidence that he was guilty of harassment, (2) whether the trial court erred by requiring him to serve his entire sentence in confinement, and (3) whether the trial court improperly considered allegations not contained within the violation warrant. After review, we find that the trial court did not abuse its discretion by revoking Brewington's probation and ordering reinstatement of his original four-year sentence.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Ross E. Alderman, District Public Defender; William J. Steed, Assistant Public Defender (on appeal) for the Appellant, Allison L. Brewington.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Angelita Dalton, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## Factual Background

On October 28, 2002, the Appellant pled guilty to the aggravated assault of the victim, Kathleen Surrett. At the guilty plea hearing, the State summarized the facts underlying this conviction as follows:

> In this case at trial, the State's proof would show that on October 1st of 2001, Ms. Kathleen [Surrett] reported to the Domestic Violence Unit of the Police Department and spoke with the detective. She stated that two days prior, on September 29th of 2001, she and the defendant had gone out bar hopping and had a few drinks. When they decided to go home, they stopped at a White Castle Restaurant to get something to eat. The defendant became agitated when some kids threw some trash on their car. He went to talk to the kids. And when he got back into the car, he was still agitated. Without warning, the defendant grabbed the victim by the hair and began punching her in the face. He seriously - - the victim kept quiet because she was afraid. As a result of the assault, both of her eyes were badly bruised. At the time, her right eye would not close, which was causing severe discomfort. Her jaw was also damaged to the point that she could not eat. Ms. [Surrett] was treated at Skyline Medical Center for her injuries.

Pursuant to the negotiated plea agreement, the Appellant received a four-year sentence to be served in the Davidson County Workhouse, which was suspended upon completion of supervised probation. As a condition of probation, the Appellant was ordered to attend a "52 week counseling program to address both domestic violence and substance abuse issues." A "no contact" provision was not included within the probation conditions because the victim requested that such condition not be imposed. On December 5, 2002, less than six weeks after the Appellant entered his plea of guilty, a probation violation warrant was issued containing the following allegations:



> Rule #1: I will obey the laws of the United States as well as any municipal ordinances.
> Violation of Rule #1: Client was arrested on November 14, 2002 for Repetitive Harassment (GS108283) and Convicted Harassment (GS108041).
> Rule #2: I will report all arrest(s), including traffic violations, immediately, regardless of the outcome, to my Probation Officer.
> Violation of Rule #2: Client was arrested on November 14, 2002 for Repetitive Harassment, but failed to report the arrests to his probation officer.

A probation revocation hearing was held on February 7, 2003. The victim testified that, in November of 2002, she obtained two harassment warrants against the Appellant, which were still pending in the general sessions court. The first warrant was based upon events which occurred on November 4th. She testified that:

I - - I believe it was November fourth, Monday night, he came to my house with his eight-year-old son, in the evening. And he started to - - to get mouthy while he was in my home, and I - - I'd asked him to leave.

. . . .

What I had to do is I got on the phone and I dialed Nine-One-One. And I asked him to leave.

In the meantime, him and my son had some words together. He told my son to come outside and take care of it.

. . . .

[The Appellant] called several times. He went from my home phone to my cell phone, back and forth.

. . . .

He was just hotheaded, like he normally is. And I had asked him - - he knew - - I had asked him to leave. I says - - I didn't wanna deal with it, you know - - "Don't call me anymore." He called back.

On this occasion, according to the victim, the Appellant, while inside her home, threatened, "Tomorrow I'll do what I have to do." The second warrant pertained to events occurring on November 8th. The victim stated that:

I was at work. That day repeatedly I was getting phone calls on the same line coming in. It's - - it's the one line that [the Appellant] knows very well.

The calls kept coming in. They were hangups and there were people laughing. There was a female and a male.

Not all the time do I answer the phone; but, the last couple a (sic) times during the afternoon - - I think it was, like, at two o'clock - - I started answering the phones; and I heard [the Appellant's] voice.

On cross-examination, the victim testified that her relationship with the Appellant had "been a very controlling, very abusive relationship." She conceded that, on several occasions, she had voluntarily consented to be in the Appellant's company after his release on probation. However, she explained, "He threatened to make me lose my job. He - - he just kept at me. He just kept constantly at me, whether it be by phone (sic). And at a point I just thought, maybe, I should just accept him back in my life, because that's the only sanity (sic)." She also conceded that she deposited money

-3-

in the Appellant's jail account to allow him to make phone calls while his probation revocation hearing was pending. She testified that she did so because "his mom kept calling[.]"

Ed Brady, the Appellant's probation officer, testified that he began supervising the Appellant in late December of 2002. With regard to the Appellant's arrests for harassment, Brady testified, "[h]e never reported to me, when he was under my supervision. However, he did report it to Mr. Tim Dean, who was [his] Probation Officer before I received his case." Brady also testified that the Appellant had an additional "bad check charge[,]" which he was unaware of until the hearing because the Appellant did not report it to him. Brady stated that he had not received any proof that the Appellant had enrolled in a counseling program or paid any probation fees, both conditions of his probation. According to Brady, he and the Appellant had never met in person, as the Appellant was arrested on the probation violation warrant on December 18th and was in continuous custody until the hearing.

The Appellant's mother, Margaret Brewington, also testified at the hearing. She testified that, between the October 28th guilty plea hearing and the Appellant's arrest on December 18th, the Appellant and the victim were together almost "[e]very day . . . or every other day[.]" She stated that the victim frequently called and visited her home looking for the Appellant. According to Mrs. Brewington, the victim stated that she "wasn't for sure that it was" the Appellant who called her work.

The Appellant also testified on his own behalf at the hearing. He denied that he made "calls in a harassing manner" to the victim. He claimed that, between October 28th and December 18th, he and the victim "were together five days outta (sic) the week, in the afternoons or on the weekends, doing something together." He also testified that he bounced three checks because the victim had given him a worthless check and the account was then closed. He maintained that he did not know the account was closed when he wrote the checks. He averred that he intended to pay the money owed by March 31, 2003. He then testified that he was with Beth Nevels, an administrative secretary with the Greenbrier Police Department, not the victim, on November 4th. According to the Appellant, he and Nevels were discussing "what [he] could do about being harassed by [the victim]." After proof from both the State and the defense, the trial court continued the hearing until February 18th in order to call additional witnesses and resolve material conflicts in the testimony.

On February 18th, Anthony Windsor, an investigator for Gaylord Entertainment Company, testified concerning the worthless checks written by the Appellant at the Opryland Hotel on November 29th and 30th of 2002. According to Windsor, the Appellant stated that "he had a couple of checking accounts and he may have written a check on the wrong account[.]" Thereafter, during a meeting between the Appellant and Windsor, the Appellant agreed to repay the money. Windsor testified that the driver license's numbers on each of the checks were different. Windsor stated that the Appellant was convicted in the general sessions court of the worthless check offense.

Beth Nevels testified that she had spoken with the Appellant concerning "a problem with a lady that was harassing him." According to Nevels, she offered the Appellant advice and answered

his questions, but she could not remember specific dates that they met. Nevels also stated that the Appellant advised her to disregard any subpoena she might receive concerning the probation revocation hearing, as it had been settled.

At the hearing, defense counsel informed the court that, on February 11, 2002, a general sessions hearing was conducted on the two harassment warrants and that the Appellant was found not guilty. At the conclusion of proof, the trial court revoked the Appellant's probation and remanded him to the County Workhouse, finding that:

> So, to me, it would be obvious that Mr. Brewington has violated his probation in terms of being arrested, especially where the standard is less, in terms of the proof that the State has to carry, because it would seem quite odd to me that someone who was wanting and vigorously defended himself concerning these harassing phone calls and proposed that he had a witness that would back that up - - and I understand he thinks one thing and then Ms. Nevels doesn't really know the dates that she was visiting with Mr. Brewington. But it would seem odd that that person - - Mr. Brewington would contact that witness and tell them not to come because it had been settled, when he wants the person here telling the truth. So that's a long way of saying, I don't think Mr. Brewington has been honest with the Court, which makes the Court more so than it was back on February the 7th, more attuned to placing more credibility on Ms. [Surrett] about the incident from November 4th.

> So if you do that, then you've got threats to Ms. [Surrett], two new arrests, one of which results in a conviction on checks on multiple occasions with different license numbers. That would, to me, be odd that if you're unbeknownst writing some check that you think is good, that you would give three different driver's license numbers for someone to track him down to make it good.

> So all of that added up leads me to believe that Mr. Brewington is in violation of his probation. And I'll place the original sentence into effect.

On March 10, 2003, the Appellant filed a document titled, "Motion for New Trial For Judgment of Acquittal, to Arrest Judgment, and to Reduce Sentence[, ]" wherein he argued that the trial court improperly considered testimony concerning the worthless check conviction as a basis for revoking his probation because the offense was not alleged in the violation warrant. The trial court denied the Appellant's motion, reasoning that:

> The defendant alleges that the Court considered the harassment charges and the worthless check charges in rendering its decision on February 18, 2003. As previously stated, the Court can consider the underlying charges notwithstanding their disposition. Further, the defendant volunteered testimony regarding the worthless check offenses and the warrants were made exhibits on February 7, 2003. The Court found that the defendant was not truthful with the Court concerning the

circumstances surrounding the worthless check convictions nor the harassment charge. The Court reset the hearing until February 18, 2003 and notified the parties that subpoenas would be issued for additional witnesses including the [investigator] in the worthless check charges. In the subsequent hearing, the defendant did not complain of any surprise or concern about addressing this additional violation. Upon considering the proof at the hearing and exhibits, the Court finds that the defendant violated his probation by a preponderance of the evidence.

The Appellant appeals, arguing that (1) "the trial court erred by revoking [his] probation" because the "record contains no substantial evidence to support a finding by a preponderance of the evidence that he either knowingly harassed Surrett, or failed to report those allegations to his probation officer[,]" (2) "the trial court erred in sentencing him to serve his entire sentence in continuous confinement[,]" and (3) the trial court improperly considered evidence relating to the worthless check conviction because that offense was not contained in the violation warrant.

## ANALYSIS

If the trial court finds by a preponderance of the evidence that a defendant has violated a condition of his probation, the court has the authority to revoke the probation and reinstate the judgment as originally entered. Tenn. Code Ann. §§ 40-35-310 , -311(e), -36-106(e)(4) (2003). This court reviews a revocation of probation under an abuse of discretion standard. *State v. Stubblefield*, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997). This means that, if the record presents substantial evidence to support revocation, the trial court's action will be approved. *Id*. In other words, the evidence need only show that the trial judge has exercised "conscientious and intelligent judgment in making the decision rather than acting arbitrarily." *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980)). Thus, in reviewing the trial court's action, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment.

First, the Appellant contends that the evidence adduced at the probation revocation hearing did not support revocation of his sentence. In the present case, the trial court specifically discredited the Appellant's testimony concerning his version of the circumstances surrounding the warrants. In probation revocation hearings, the credibility of witnesses is to be determined by the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The victim testified that she obtained a harassment warrant against the Appellant because on November 4, 2002, he refused to leave her home, he was verbally abusive towards her, and he threatened her son. She also testified that after he left and an officer arrived at her home, the Appellant repeatedly called her, speaking angrily toward her and ignoring her directions not to call. The victim further testified that she obtained a harassment warrant against the Appellant because he harassed her by phone at her place of work on November 8, 2002. According to the victim, her office received numerous harassing and annoying phone calls on that date. When she answered the phone, she identified the Appellant's voice.

Pursuant to Tennessee Code Annotated section 39-17-308(a) (2003), harassment is defined as:

a) A person commits an offense who intentionally:

. . . .

(2) Places one (1) or more telephone calls anonymously, or at an hour or hours known to be inconvenient to the victim, or in an offensively repetitive manner, or without a legitimate purpose of communication, and by this action knowingly annoys or alarms the recipient[.] . . .

The fact that the Appellant was not convicted of the harassment offenses does not mandate dismissal of the probation violation warrant. *State v. Delp*, 614 S.W.2d 395, 396-97 (Tenn. Crim. App. 1980); *Ray v. State*, 576 S.W.2d 598, 600 (Tenn. Crim. App. 1978) (citing *Gaylon v. State*, 226 S.W.2d 270, 272 (Tenn. 1949)); *State v. Larry D. Turnley*, No. 01C01-9403-CR-00094 (Tenn. Crim. App. at Nashville, Dec. 22, 1994).

We conclude that the evidence from the revocation hearing established by a preponderance of the evidence that the Appellant violated the terms of his probation by harassing the victim, *i.e.*, "I will obey the laws of the United States as well as any municipal ordinances."[1] His conduct in continuing to harass the victim demonstrates his unwillingness to accept responsibility and move forward. The Appellant's flagrant abuse of his judicially granted liberty is indefensible. The primary goal of non-institutional punishment is to provide a period of grace in order to assist the rehabilitation of a penitent offender. *Burns v. United States*, 287 U.S. 216, 220, 53 S. Ct. 154, 155 (1932). Accordingly, we cannot conclude that the trial court abused its discretion in revoking the Appellant's suspended sentence.

Next, the Appellant contends that "the trial court erred by sentencing him to serve his entire sentence in continuous confinement." He argues that the trial court abused its discretion by imposing the original four-year sentence of incarceration rather than granting an alternative or split confinement sentence. We note that the principles of sentencing have no application in a probation violation proceeding. Furthermore, the law concerning revocation of a suspended sentence is clear. *State v. Shawn M. Brooks*, No. M2001-02358-CCA-R3-CD (Tenn. Crim. App. at Nashville, July 29, 2002), *perm. to appeal denied*, (Tenn. 2002). As previously noted, upon finding by a preponderance of the evidence that a defendant has violated the conditions of probation, a trial court retains the discretion to revoke the defendant from a suspended sentence and cause execution of the original judgment as it was entered. Tenn. Code Ann. §§ 40-35-310 , -311(e), -36-106(e)(4). The trial court

---

[1]The violation warrant also alleges that the Appellant failed to report his arrests for harassment to his probation officer. However, this allegation was proven incorrect at the hearing. According to Ed Brady, the Appellant's probation officer, the Appellant did report the arrests to his previous probation officer. The Appellant's case was transferred to Brady in late December of 2002, after the Appellant had already been placed in custody.

was statutorily authorized to reinstate the Appellant's original four-year County Workhouse sentence. This issue is without merit.

Lastly, the Appellant argues that the trial court committed reversible error by considering evidence of the worthless check conviction as a basis for revoking his probation because this offense was not contained in the violation warrant. In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756 (1973), the United States Supreme Court set forth the elements needed to establish the "minimum requirements of due process" in a revocation of probation proceeding:

(a) written notice of the claimed violations of [probation or] parole;

(b) disclosure to the [probationer or] parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.

*Gagnon v. Scarpelli*, 411 U.S. at 786, 93 S. Ct. at 1761 (1973) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593 (1972)); *see also State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993); *Shawn M. Brooks*, No. M2001-02358-CCA-R3-CD. We agree with the Appellant that due process requirements would not permit consideration of the worthless check conviction because the Appellant was not given written notice of this claimed violation in the warrant. Furthermore, the record does not support a waiver of this fundamental right to notice. Nonetheless, such error does not constitute reversible error because, as previously concluded, the Appellant was in violation of his probation by continuing to harass the victim, an offense which was contained in the warrant.

## CONCLUSION

Based upon the foregoing, we conclude that the trial court did not abuse its discretion in ordering revocation of the Appellant's probation and reinstatement of his four-year sentence. The judgment of the Davidson County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE

-8-